*In re* JAMES DRIVER, JR., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* JAMES DRIVER, JR., Respondent-Appellant.)

Fourth District   No. 13633

Opinion filed March 15, 1977.

Richard J. Wilson and Barbara A. Chasnoff, both of State Appellate Defender's Office, of Springfield, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (G. Michael Prall and Robert C. Perry, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

"ADJUDICATION. The giving or pronouncing a judgment or decree in a cause; also the judgment given. * * * Or the entry of a decree by a court in respect to the parties in a case. * * *" Black's Law Dictionary 63 (4th ed. 1951).

The questions posed in this appeal are whether the trial court made an "explicit adjudication" that it was in the best interest of James Driver, Jr., and the public that he be declared a ward of the court and, if such an adjudication was made, whether it was supported by the evidence in the record before us and determined without error.

On appeal, Driver does not contest the sufficiency of the evidence adduced to adjudge him a delinquent under sections 2—1 and 2—2 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, pars. 702—1, 702—2). Therefore, only those parts of the record below relevant to this appeal need be recited.

During lunch at Franklin Junior High School in Champaign, Illinois, a girl student, Dawn Matthews, felt a hand on her buttocks. She rose, turned, and in rather tart and acerbic language, loudly accused appellant James Driver, Jr., of the act. Driver was seated directly behind Dawn, facing the opposite direction. Driver rose, denied the act, then shoved her backwards on a lunch table, jumped after her and hit her about the face and head before the fight was halted by school teachers.

After the State rested, defendant moved to dismiss based on the fact that the State introduced no evidence on whether it would be in Driver's and the public's best interests that Driver be adjudged a ward of the court. The motion was denied. Later, State objections to the questioning of a Franklin Junior High School teacher about matters other than the incident in question were sustained as irrelevant. There was, however, no offer of proof. At the close of all evidence, the court adjudged Driver a delinquent and also found "from the evidence that it is in the best interests of the respondent minor that he be made a ward of the court * * *." On the next day, after the dispositional hearing, Driver's counsel recommended that, based on the whole record, the court reverse its finding that it was in Driver's and the public's best interest that Driver be a ward of the court. The court ordered instead that Driver be put on unsupervised probation until Driver's father could assure the court that Driver had earned the right to be discharged. Driver timely appealed.

■■ The State first places the jurisdictional barrier of waiver in the path of this court's decision, but it is a barrier easily hurdled. The State argues that waiver has occurred since the instant appeal is governed by rules applicable to criminal appeals (Ill. Rev. Stat. 1975, ch. 110A, par. 660(a)) and Driver failed to file either a post-adjudicatory hearing or a post-dispositional hearing motion. But Driver is attacking a bench finding of wardship based on the evidence. And such an attack is analogous to a

criminal defendant's appellate attack on the sufficiency of evidence to convict in a criminal bench trial. It has been held that failure to file any post-trial motion in a criminal bench trial does not waive on appeal issues relating to the sufficiency of the evidence, errors in admission of prejudicial hearsay, and failure to grant a motion to suppress. (*People v. Morgan* (1954), 2 Ill. 2d 360, 118 N.E.2d 19; *People v. Ford* (1974), 21 Ill. App. 3d 242, 315 N.E.2d 87; *People v. Johnson* (1973), 14 Ill. App. 3d 254, 302 N.E.2d 430; and *People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239.) This is not a case where the alleged error was not brought to the trial court's attention. In the instant case, no written motion was necessary to preserve the issue for review.

The next obstacle concerns the meaning and construction of parts of the Juvenile Court Act. During this task, we need not resort to citation in reiterating this court's duty to ascertain and effectuate the legislative intent as shown by a common sense reading of the statutes involved. The pertinent section of the Juvenile Court Act is as follows:

"§ 4—8 *Findings and Adjudication.*) (1) After hearing the evidence the court shall make and note in the minutes of the proceeding a finding of whether or not the minor is a person described in Section 2—1. If it finds that the minor is not such a person or that the best interests of the minor and the public will not be served by adjudging him a ward of the court, the court shall order the petition dismissed and the minor discharged from any detention or restriction previously ordered in such proceeding.

(2) If the court finds that the minor is a person described in Section 2—1 and that it is in the best interests of the minor and the public that he be made a ward of the court, the court shall note in its findings whether he is delinquent, otherwise in need of supervision, neglected or dependent, specifying which of Sections 2—2 through 2—5 is applicable, and shall adjudge him a ward of the court and proceed at an appropriate time to a dispositional hearing." (Ill. Rev. Stat. 1975, ch. 37, par. 704—8(1), (2).)

The minor argues that the petition should have been dismissed since only evidence of the aggravated battery was allowed at the hearing and no evidence on best interests sufficient to sustain a finding of wardship was introduced. The State counters that, in this case, evidence of the offense is sufficient for a judge to base a finding of wardship. It is unquestioned that the judge thought evidence of the aggravated battery was, by itself, sufficient to warrant a finding that wardship was in the best interests of Driver.

■■ In its brief, the State argues that "once it is established that respondent is a delinquent minor, it naturally follows that it is in his best interests to be declared a ward of the court and placed under court

supervision." We are unable to subscribe to this interpretation, for it would quite effectively emasculate the adjudicatory process clearly outlined in section 4—8. It has been held that the court must make two explicit adjudications before a minor may be found a ward of the court. If the court adjudicates a minor a delinquent but then fails to make the explicit adjudication that it is in the minor's and the public's best interests that the minor be made a ward of the court, the court lacks jurisdiction to enter a dispositional order. (*In re Barr* (1976), 37 Ill. App. 3d 10, 344 N.E.2d 517; *In re Younger* (1977), 45 Ill. App. 3d 922, 360 N.E.2d 396.) In *Barr* and *Younger*, the court reversed a dispositional order where no explicit adjudication that wardship was in the minor's and the public's best interests was made. The cases were remanded to the lower courts for a determination of whether there had been an adjudication of wardship. The decisions do not indicate whether evidence directed specifically at the second adjudication (wardship) was in the record. The definition of "adjudication," as stated above, does not, on its face, contemplate the taking of evidence, but only contemplates the act of pronouncing the finding of the court. In the instant case, at the close of all evidence at the adjudicatory hearing, the court did make a specific "adjudication" in that he pronounced it was in Driver's best interest to be declared a ward of the court. While the court did not use the complete statutory language, since it failed to indicate that it was also in the public's best interest that Driver be declared a ward of the court, we find the adjudication as stated in substantial compliance with *Barr*.

The inquiry then turns to the nature of a judicial finding of best interests and whether the finding in this case was supported by the record, for if it was not so supported, the court lacked jurisdiction to enter the wardship order. *Zook v. Spannaus* (1966), 34 Ill. 2d 612, 217 N.E.2d 789; *In re Bartha* (1969), 107 Ill. App. 2d 214, 245 N.E.2d 779.

■■ A review of the stated purpose of the Act shows that its policy is to be one of securing the care and guidance necessary to serve the needs of the minor and the public's interest in safety and familial integrity. (Ill. Rev. Stat. 1975, ch. 37, par. 701—2.) Section 1—2(2) states in part:

> "In *all proceedings* under this Act the court may direct the course thereof so as promptly to ascertain the jurisdictional facts and *fully to gather information bearing upon the current condition and future welfare of persons subject to this Act*." (Ill. Rev. Stat. 1975, ch. 37, par. 701—2(2).) (Emphasis added.)

These quoted directives indicate that in all proceedings, including by direct implication a section 4—8 adjudicatory hearing, the court is well within its power to inquire on the minor's current status in school, his family situation, and other factors bearing on whether or not it is in the minor's or the public's best interests that he be placed, as a ward, under

court supervision. While we recognize that proof of a heinous crime alone could show the requisite need for supervision, the need for information from both parties bearing on the minor's current condition and chances for future welfare so that the judge may make an informed adjudication concerning wardship is greatest in those adjudicatory hearings where the alleged delinquency alone gives little guidance on the need for court supervision. To help keep the evidence at the adjudicatory hearing in some semblance of order, the legislature specifically stated in section 4—6 that "[a]t the adjudicatory hearing, the court shall first consider only the question whether the minor is a [delinquent]" (Ill. Rev. Stat. 1975, ch. 37, par. 704—6). The court determines not only the question of delinquency, but also that of best interest concerning wardship at the adjudicatory hearing. (See, *e.g.*, Ill. Rev. Stat. 1975, ch. 37, par. 701—4.) After evidence of the alleged offense has been tendered, the court should receive relevant evidence pertaining to the court's second adjudication on wardship. The judge is presumed to be able to keep the evidence separate and apply only relevant evidence to each determination. This is in accord with the general rule that, in a bench trial, the court will be presumed to ignore incompetent or irrelevant evidence.

Sections 1—4 and 4—6 both require the State to prove allegations of delinquency (violation of a Federal or State law or municipal ordinance) beyond a reasonable doubt or, depending on the statutory basis for the petition, prove by a preponderance of the evidence that a minor is otherwise in need of supervision, neglected or dependent. The Act, however, nowhere states, and, we believe intentionally so, what standard of proof, if any, is required for the court to find that it is in the minor's and the public's best interests that he be made a ward of the court. The finding of wardship by the lower court will be upheld if it is supported by the record (*Bartha*). We now apply the concept of an informed decision on wardship by the lower court based on (a) the policy concepts of the Act and (b) evidence adduced at the adjudicatory hearing to the case before us.

■■ The court substantially complied with *Barr* and *Younger* in that the transcript and written order reveal an explicit adjudication that it is in the minor's best interests that he be made a ward of the court. At trial, however, the court sustained objections to defense counsel's attempt to introduce evidence concerning his client's best interests vis-a-vis wardship. While we cannot say that the evidence introduced by the State at the adjudicatory hearing in this case would be insufficient to support an adjudication of wardship, the court, in refusing evidence on Driver's best interests, foreclosed itself from making a totally informed determination as contemplated by the Act; the decision to refuse defense evidence on best interests by sustaining objections thereto was error. The error was

magnified in a case such as this where, if evidence concerning best interests were introduced at the adjudicatory hearing, the court may not have adjudged Driver a ward. This court must, consequently, vacate the finding of wardship and remand this cause to the trial court for the purpose of hearing evidence relevant to whether or not it would be in Driver's and the public's best interests that he be made a ward of the court. Since we vacate the finding of wardship, the court was without jurisdiction to enter the dispositional order; that order also must be vacated.

Accordingly, the adjudication of the trial court finding that it is in the best interests of James Driver, Jr., that he be declared a ward of the court is vacated, as is the subsequent dispositional order. The cause is remanded for further proceedings in accord with this opinion.

Reversed and remanded.

CRAVEN, P. J., and REARDON, J., concur.