THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ARDEST MARSHALL, Defendant-Appellant.

First District (1st Division)   No. 62856

Opinion filed April 4, 1977.

James Geis and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

After a jury trial, defendant, Ardest Marshall, was found guilty of the offense of armed robbery. The trial court entered judgment on this

verdict and sentenced defendant to 6 to 12 years in the Illinois State Penitentiary.

Defendant now appeals from this judgment and makes the following three contentions: (1) that the trial court erred in denying defendant's motion to suppress a lineup identification of the defendant made after a charge had been placed against him and at a time when the defendant was not represented by counsel; (2) that the defendant was denied his constitutional right to confront and cross-examine a witness when the preliminary hearing testimony of a witness who had died was read to the jury; and (3) that the defendant was prejudiced by the admission into evidence, over defense objections, of numerous hearsay identifications of the defendant.

We affirm.

The testimony adduced at trial established that at approximately 9:15 a.m. on November 3, 1972, two men entered a tire company located at 349 West 31st Street in Chicago, Illinois, and inquired about purchasing some tires. The two men stayed for 15 minutes, left and returned at approximately 1 p.m. the same day. One of the two men entered the office of Mr. Benjamin Olswang, the proprietor of the tire company, and proceeded to garage area with a gun pointed at Mr. Olswang's head. After rifling through his wallet, the intruders bound Mr. Olswang's hands and told one of Mr. Olswang's employees, Milton Brown, to load some truck tires onto one of the company trucks. As the tires were being loaded, another employee, David Jackson, entered the garage and was tied up at gunpoint. After spending approximately 45 minutes in the tire company, the two men tied up Milton Brown, tore two telephones from the walls, and left with the tires. Further testimony established that several hours after the robbery, two men arrived at the MTS Cartage Co., located at 13505 South Indiana Avenue in a vehicle loaded with truck tires. The two men sold 10 tires for $500 to the proprietor, Mr. William Williamson. At trial, Mr. Williamson positively identified the defendant as one of the men who sold him the tires.

At trial, Milton Brown and David Jackson positively identified the defendant as the man with the gun who had committed the robbery. Both further testified that prior to trial they identified defendant from a group of photographs shown to them by a police investigator, Edmund Butz. David Jackson also stated that he had identified defendant in a lineup.

Edmund Butz, an investigator for the Chicago Police Department, testified that on January 17, 1973, he showed a group of photographs to Ben Olswang, Milton Brown and David Jackson and that each of the three men identified defendant's photograph as that of one of the men involved in the robbery. Investigator Butz also testified at trial that on January 30, 1973, he conducted a lineup viewed by Ben Olswang and David Jackson and that both men identified the defendant in the lineup.

During trial, the State, noting that Mr. Olswang had died prior to trial, sought to introduce into evidence Mr. Olswang's testimony at a preliminary hearing. Over defendant's objection, the trial court permitted the State to read Mr. Olswang's preliminary hearing testimony to the jury. The testimony which was read to the jury indicated, *inter alia*, that Mr. Olswang identified the defendant at the preliminary hearing as one of the men who had committed the robbery.

After hearing all of the above evidence, the jury returned a finding of guilty. The trial court entered judgment on this verdict and sentenced defendant to six to 12 years in the Illinois State Penitentiary.

Defendant initially contends that the trial court erred in denying his motion to suppress the lineup identifications because such identifications were effected after a charge had been placed against the defendant and at a time when the defendant was not represented by counsel. The record reveals that on January 30, 1973, defendant was arrested and identified in a lineup and that during this lineup defendant was not represented by counsel. Approximately one week before this lineup, a complaint for preliminary examination charging defendant with armed robbery and an arrest warrant had been issued.

■■ In *Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882, the United States Supreme Court held that the requirement of presence of counsel at a lineup extends to any "adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Relying on *Kirby*, this court in *People v. Hinton* (1974), 23 Ill. App. 3d 369, 319 N.E.2d 313, held that the issuance of a complaint, followed by an arrest warrant and the actual arrest of the defendant was a "formal charge" within the purview of *Kirby* and required the presence of counsel at the lineup. We similarly believe, in the instant case, at the time of the lineup adverse judicial proceedings had begun and that defendant should have been afforded counsel. However, we disagree with defendant's contention that the absence of counsel at the lineup requires us to reverse the judgment of the trial court. It is well established that the requirement of counsel's presence is based upon consideration of due process and that if all the circumstances surrounding the identification procedure taken together clearly indicate that due process was followed, the absence of counsel at the identification lineup is not fatal to the judgment reached by the trial court. (See *People v. Hinton* (1974), 23 Ill. App. 3d 369, 319 N.E.2d 313.) Addressing itself to the question of the effect of a lineup identification without the presence of counsel, the United States Supreme Court in *United States v. Wade* (1967), 388 U.S. 218, 241, 18 L. Ed. 2d 1149, 1165, 87 S. Ct. 1926, 1939, expressed the following views:

"We think it follows that the proper test to be applied in these situations is that quoted in Wong Sun v. United States, 371 U.S.

471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, ' "[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint". Maguire, Evidence of Guilt 221 (1959).' "

The court in *Wade* then mentioned the following factors to be considered in applying the above test:

"[T]he prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." (388 U.S. 218, 241, 18 L. Ed. 2d 1149, 1165, 87 S. Ct. 1926, 1940.)

The instant defendant makes no contention in this appeal that the lineup was improperly suggestive or otherwise unconstitutionally conducted. Furthermore, each witness who identified the defendant in the lineup spent approximately 45 minutes in close proximity with the defendant and identified defendant's photograph from a series of photographs shown to them by an investigating police officer. The record reveals no discrepancy between any prelineup description and defendant's actual description nor any failure to identify defendant on a prior occasion. Also, the period of time between the robbery and lineup identification, 11 weeks, is not unduly long and the identification testimony of the various witnesses, both throughout the trial court at the preliminary hearing and during trial, was clear, concise and consistent. Under these circumstances, there is no indication that defendant was denied due process and the fact that defendant did not have counsel at the lineup is not fatal to the judgment reached by the trial court.

■■ Defendant next contends that it was error for the trial court to allow the State to read into evidence at trial the preliminary hearing testimony of Ben Olswang, a witness, who had died prior to trial. Defendant argues that the above procedure violated his right to confront and cross-examine witnesses testifying against him. The above question is thoroughly discussed by our supreme court in its recent decision, *People v. Tennant* (1976), 65 Ill. 2d 401, 358 N.E.2d 1116. In *Tennant*, the court held that "where * * * there was an adequate opportunity for cross-examination of the preliminary hearing testimony of a witness who dies prior to trial, the earlier testimony of that witness is properly admitted at trial." (65 Ill. 2d 401, 411, 358 N.E.2d 1116, 1121. See also *People v. Horton* (1976), 65 Ill. 2d 413, 358 N.E.2d 1121.) Although defendant argues in this appeal that the admission into evidence of Mr. Olswang's preliminary

hearing testimony violated his constitutional right to confront and cross-examine witnesses, defendant makes no contention that he was not afforded an adequate opportunity to cross-examine Mr. Olswang at the preliminary hearing. Indeed, the record reflects that at the preliminary hearing defendant was represented by counsel who cross-examined Mr. Olswang relevant to his identification of defendant and later called Mr. Olswang as his own witness to interrogate him further. It is clear from the record that defendant was afforded an adequate opportunity to cross-examine Mr. Olswang at the preliminary hearing. Thus the trial court did not err when it allowed the State to read Mr. Olswang's preliminary hearing testimony into evidence at trial.

■■ Defendant finally contends that the trial court erred when it permitted the State, over defendant's objection, to elicit from its witness numerous hearsay identifications of defendant. The specific testimony about which defendant complains is that of Investigator Butz who testified at trial, first, that Ben Olswang, Milton Brown, and David Jackson had picked defendant's photograph from a group of photographs as one of the men who had participated in the robbery and, second, that Ben Olswang and David Jackson had selected the defendant in the lineup. In *People v. Warren* (1975), 32 Ill. App. 3d 218, 220, 336 N.E.2d 557, 559, the court set down the following safeguards to be used in determining whether such testimony is admissible:

> "An officer's testimony about a witness' out-of-court identifications of the defendant [is] admissible if the person who makes the out-of-court identification: (1) is present at trial; (2) testifies to the prior identification; and (3) is subject to cross-examination. (*People v. Carpenter* (1963), 28 Ill. 2d 116.)" (32 Ill. App. 3d 218, 220, 336 N.E.2d 557, 559.)

All three requirements of *Warren* are satisfied in the instant case. The persons who made the out-of-court identifications were present at trial, Jackson and Brown physically, and Olswang figuratively through use of his previous testimony. Each similarly testified as to their respective out-of-court identifications and each was subject to the opportunity for cross-examination concerning the nature of the prior identifications. The trial court did not err in allowing into evidence Investigator Butz' testimony.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

O'CONNOR and BUA, JJ., concur.